UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RICHARD N. BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:16-cv-01193-RLY-DML |
| | ) | |
| MICHAEL MALONEY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Richard N. Bell, alleges that Defendant, Michael Maloney, committed copyright infringement when he downloaded and published Bell's photograph of the Indianapolis skyline without authorization. Bell now moves for summary judgment on the issue of infringement, and asks that damages be determined at trial. Maloney cross-moves for summary judgment on the issue of ownership. He argues that the photo is a "work made for hire," meaning that even though Bell personally took the photograph with his own camera, he does not actually own the copyright. If true, Bell cannot sue for infringement. However, Maloney essentially concedes that if Bell does own the copyright, he infringed.

The court holds that there is a genuine dispute of material fact as to the ownership of the copyright. Therefore, both motions must be **DENIED**.

**I. Background**

Bell, a licensed attorney, was a general partner at the law firm of Cohen & Malad ("C&M") from 1984 to 2009. (Filing No. 32-2, First Declaration of Richard Bell ¶¶ 2-3).

1

On February 8, 2000, Bell signed a contract with West Publishing on behalf of C&M. (Filing No. 40-1, Deposition of Richard Bell, Exhibit D). Pursuant to this contract, West agreed to develop and host an official website for C&M. (*Id.*). The goal was to generate business for the firm. (Bell Dep. 73:1-14). Bell is listed as the "Firm Contact" on the agreement. (Exhibit D to Bell Dep.). Per the terms of the contract, a website development meeting between West and Bell was scheduled for February 19, 2000, with an alternate date of February 20. (*Id.*). Bell has no current recollection of this meeting. (Bell Dep. 66:18-67:15). Nonetheless, an e-mail to Bell from a West representative dated February 20 appears to reference Bell's involvement in the call; the message provides, "Great first call… lots of info sent in while we were on the phone together…" (Exhibit E to Bell Dep.).

Bell exchanged numerous e-mails with West employees concerning the C&M website. All such communications were sent to or from Bell's office e-mail account during normal business hours. (*See id.*). At some point during these discussions, Bell believes that someone from West proposed using various photographs of Indianapolis on the C&M website.[1] (Bell Dep. 99:12-15). This was intended to make the website more attractive. (*Id.* 109:16-19). Bell rejected the idea of using generic stock photos because his photos were better and free for C&M to use. (*Id.* 114:2-15). He had discussions with West personnel about including his photographs on the website. (*Id.* 67:20-23). An e-

---

[1] In his reply brief, Bell asserts that this conversation took place in August 2000. No date is mentioned in this part of the deposition though.

mail dated Wednesday, March 8, 2000 states that Bell "is also sending additional images for the homepage."[2] (Exhibit E to Bell Dep.).

On the same day, March 8, at approximately 4:00 p.m., Bell took a photograph of the downtown Indianapolis skyline from St. Clair Avenue at the canal bridge (the "Indianapolis Photo"). (Filing No. 41-3, Bell's Answers to Interrogatories at 3-4; Filing No. 38-4, Second Declaration of Richard Bell ¶ 1). He used his own camera to take the Indianapolis Photo; no equipment owned by C&M was used. (Second Bell Dec. ¶ 20). He was not on property owned by C&M when he took the photo. (*Id.* ¶ 21).

Bell believes that the website was reviewed by C&M shareholders at firm meetings before it was launched. (Bell's Answers to Interrogatories at 5). The partners specifically discussed using Bell's photos on the website. (Bell Dep. 77:9-25). While some partners disagreed with the idea, it was approved after taking a vote. (*Id.*). Bell ultimately submitted the Indianapolis Photo to West on August 22, 2000. (Exhibit E to Bell Dep.). The Indianapolis Photo was displayed on the C&M website, but the exact dates of publication are somewhat unclear. According to C&M, the photo appeared on its website from November 2001 to December 2001, and then January 1, 2002 to June 30, 2005. Yet, an e-mail sent from a West representative to Bell indicates that the photo was

---

[2] Bell testified, "The idea of adding photographs to the website was not even a subject that was discussed at any time prior to approximately August of 2000." (Bell Dep. 82:5-7). In his briefing, he suggests that this "undisputed" testimony effectively dismantles Maloney's work for hire theory. But the March 8 e-mail plainly shows that Bell and West personnel were discussing adding photos to the website long before August 2000.

3

added to the C&M home page on or about August 24, 2000. (Exhibits E and G to Bell Dep.).

Bell and C&M never executed anything in writing pertaining to ownership rights of the Indianapolis Photo. (Bell Dep. 97:13-22; Second Bell Dec. ¶ 18). Bell claims that he was not employed by C&M to take photographs, and that he was never compensated by C&M for taking photographs. (Second Bell Dec. ¶ 16). C&M did not pay Bell for its use of the Indianapolis Photo. (*Id.* ¶¶ 25, 28). C&M has never made any claim that any of the photographs taken by Bell are owned by the law firm. (*Id.* ¶ 17).

Bell first published the Indianapolis Photo on August 29, 2000 on Webshots. (Second Bell Dec. ¶ 4). In 2011, he published the picture on his website, www.richbellphotos.com. (*Id.* ¶ 5). Through these websites, he has sold a digital download version of the Indianapolis Photo for $200.00. (*Id.* ¶ 6). He currently sells the photo on the latter page. (*Id.*; *see* Filing No. 38-2, Sales Records). Bell registered the Indianapolis Photo with the U.S. Copyright Office on August 4, 2011. (Second Bell Dec. ¶ 7; Filing No. 38-3, Certificate of Registration).

In May 2015, Bell discovered, via Google Images, that Maloney had published the Indianapolis Photo on his website in 2013. (Second Bell Dec. ¶¶ 8, 14). Specifically, the Indianapolis Photo appeared at http://www.maloneyforensics.com/Indianapolis/March_4-6,_2014.html. (*Id.* ¶ 13). Maloney did not have permission to use the picture. (*Id.* ¶ 11).

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a). When considering Bell's motion, the court considers the facts in the light most favorable to Maloney; when considering Maloney's motion, the facts are considered in the light most favorable to Bell. *First State Bank v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009).

### III. Collateral Motions

Before addressing the merits of the parties' summary judgment motions, the court briefly examines two collateral motions. First, Bell moves to (a) strike the affidavit of Maxine Maloney (the Defendant's wife), and (b) bar her from testifying at trial. Bell claims that Maxine was not disclosed as a witness on Maloney's preliminary witness list. Instead, she was first disclosed on April 14, when Maloney designated her affidavit in support of his opening summary judgment brief. This is the date that discovery as to damages closed.

Second, Maloney moves to strike Bell's reply brief. His brief was due on May 12. On May 11, one day before the deadline, Bell requested an additional thirty days to obtain discovery and file his brief. The Magistrate Judge denied his motion on May 23. Bell then filed his brief on May 26, two weeks after the deadline.

The court finds that while both parties erred here, the errors were harmless. Neither party presents a convincing argument that he has been prejudiced. Accordingly, both motions are denied.

### IV. Discussion

A plaintiff bringing a claim for copyright infringement can only prevail if he establishes two elements: "(1) ownership of a valid copyright, and (2) copying of

constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In this case, only the first element is disputed. *See Urbont v. Sony Music Entm't*, 831 F.3d 80, 87 n.6 (2d Cir. 2016) ("[P]laintiffs must prove ownership not only as an element of a copyright infringement claim, but also to assert their standing to bring suit."). Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102(a)). Bell created the work at issue because he personally took the Indianapolis Photo, but that is not the end of the inquiry.

Maloney invokes an exception to this general rule known as the "work made for hire" doctrine. If this exception applies, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright, unless there is a written agreement to the contrary. 17 U.S.C. § 201(b). A work is properly classified as one made for hire under two circumstances, only one of which is relevant here. If the work was "prepared by an employee within the scope of his or her employment," it is a work for hire. 17 U.S.C. § 101. Such a finding would be fatal to Bell's case–it would mean that C&M owns the copyright, and Bell has no standing to sue *anyone* for infringement.

Bell concedes that he was an employee of C&M during the relevant period. Therefore, the dispositive question is whether he was acting within the scope of his employment when he took the Indianapolis Photo. Courts faced with this question

6

generally apply the three-prong test in Restatement (Second) of Agency § 228 (1958). *U.S. Auto Parts Network, Inc. v. Parts Geek, Ltd. Liab. Co.*, 692 F.3d 1009, 1015 (9th Cir. 2012) (citing *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 186 (2d Cir. 2004); *Avtec Sys. v. Peiffer*, 21 F.3d 568, 571 (4th Cir. 1994)).  The Restatement (Second) provides,

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits; [and]
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master . . .
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.[3]

The court considers each element in turn.

First, Bell argues that taking photos is not the conduct he was employed to perform.  He was hired by C&M to work as an attorney, not a photographer.  Bell asserts that he was not required to take photos as part of his employment, C&M did not provide him with a camera, and C&M never compensated him for taking photos.

---

[3] The American Law Institute has published a more recent Restatement of Agency.  The Restatement (Third) of Agency provides, "An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.  An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."  Restatement (Third) of Agency § 7.07(2) (2006).  *See Mohr v. Sci. & Eng'g Servs.*, 204 F. Supp. 3d 1281, 1294 (N.D. Ala. 2016).  However, it appears that no court has adopted the Restatement (Third) in this context.  No party raises this test, so the court discusses it no further.

7

Maloney posits that while Bell was not hired by C&M as a photographer *per se*, his act of taking the Indianapolis Photo was incidental and ancillary to his role as a partner in the firm. Bell was not a young associate that was employed solely to conduct legal research, draft briefs, and respond to discovery requests. Rather, as a partner, Bell was responsible for both representing clients *and* creating business for the firm. In an effort to generate business and attract prospective clients, he was tasked with serving as the Firm Contact with West, the company developing the C&M website. He corresponded with several West employees about the website via his office account during normal business hours. They discussed including photographs of Indianapolis on the website in general, as well as using Bell's photos specifically. Based on these facts, reasonable jurors could disagree as to whether taking the Indianapolis Photo was the type of conduct Bell was employed to perform.

For the second factor, Bell emphasizes that he was not on C&M property when he took the photo. Maloney retorts that this would have been impossible–i.e., one cannot capture a panoramic skyline photo like the one in question from C&M's business address. As a result, this fact should purportedly be given little weight. Maloney also highlights that Bell took the photo during normal work hours (at 4:00 p.m.) on a normal work day (a Wednesday). Moreover, he notes that lawyers often perform much of their work outside of their physical office. Reasonable jurors could come to different conclusions as to whether Maloney's conduct occurred substantially within authorized time and space limits.

Lastly, the court must consider whether Bell took the Indianapolis photo out of a motivation to serve C&M. This element centers on Bell's intent, so his own testimony on the subject is an important consideration. For example, if he said that he took the photo for his own personal collection with (at least initially) no thought of submitting it to West for the C&M website, that would support his claim that he was not acting within the scope of his employment. Strangely though, Bell fails to point to any testimony like this in his deposition or declarations. While the court has no duty to search the record, *see* S.D. Ind. L.R. 56-1(h), it found no such testimony upon conducting its own review of the evidence. The closest Bell gets is a general statement that "photography has been his passionate hobby" since 1971. (Second Bell Dec. ¶ 15).

Putting that oddity aside, constructing a timeline is helpful for this factor. The relevant events are recounted below:

| Date | Event |
| --- | --- |
| February 8, 2000 | Bell signs a website development contract with West on behalf of C&M |
| February 20, 2000 | Bell participates in a conference call with West personnel to discuss the website |
| March 8, 2000 | Bell discusses sending additional images to be used on the C&M website |
| March 8, 2000 | Bell takes the Indianapolis Photo |
| Unclear | The partners at C&M vote in favor of using the Indianapolis Photo on the website |
| August 22, 2000 | Bell submits the Indianapolis Photo to West |

This chain of events suggests that Bell's decision to take the photo naturally followed from the discussions he had with West personnel relating to development of the C&M website. This inference is also supported by the fact that Bell allowed C&M to use the photo for free. But if serving C&M was Bell's purpose, it is unclear why he delayed

9

submitting the photo to West for five months. One might conclude that it simply took time for the C&M partners to approve the photo, but there is scant evidence in the record on that topic. A reasonable jury considering this evidence could find that Bell's taking of the photo was actuated, at least in part, by a purpose to serve C&M.

Overall, the facts of this case give rise to competing inferences. Accordingly, the court cannot decide, as a matter of law, whether Bell was acting within the scope of his employment when he took the Indianapolis Photo. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("[A court's] job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts."). This means that the court cannot conclude whether Bell owns the copyright, which is required to establish infringement. *See Feist*, 499 U.S. at 361; *Urbont*, 831 F.3d at 87. These issues must be resolved at trial.

## V. Conclusion

The court finds that there is a genuine dispute of material fact as to whether Bell owns the copyright to the Indianapolis Photo. Therefore, the parties' cross motions for summary judgment (Filing Nos. 37 and 39) are both **DENIED**. Bell's Motion to Strike Maxine's Affidavit (Filing No. 48) is also **DENIED**.

**SO ORDERED** this 18th day of July 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.